MAY TERM, 1881, No. 155.                    MAY 16TH, 1881.

# Philadelphia Contributionship for the Insurance of Houses against Loss by Fire *versus* The Commonwealth.

1. Under the tenth section of the act of June 7th, 1879, which provides that the individuals and corporations therein named "shall annually, upon the first Monday of November of each year, make report to the auditor-general, under oath or affirmation, setting forth the entire amount of net earnings or income received by said individual, company, or corporation, from all sources during the preceding year; and upon such net earnings or income the said individual, company, or corporation, as the case may be, shall pay into the State treasury for the use of the State, within sixty days thereafter, three per centum upon such annual net earnings or income, etc.," income derived by a corporation from interest on bonds of the United States is taxable.

2. And income derived from interest on bonds of the State of Pennsylvania, which by the terms of the acts authorizing their issue were expressly made payable free from State taxes, is taxable.

3. Such a tax is not a tax on the bonds as such, but is a tax on the corporate franchise, measured by its net earnings.

4. For the purposes of such taxation, a corporation is not entitled to deduct from its gross earnings the loss on United States securities which it had purchased above par, and which the government paid off during the year at par.

5. This difference is in no proper sense a loss, but if it were otherwise, a decrease of capital does not necessarily diminish the annual net earnings.

ERROR to the Court of Common Pleas of *Dauphin County.*

Case stated upon an appeal from the settlement of an account by the auditor-general and State treasurer against the Philadelphia Contributionship for the Insurance of Houses against Loss by Fire.

The defendant is a mutual fire insurance company of the State of Pennsylvania, organized in 1752, and incorporated in 1768. Under the tenth section of the act of June 7th, 1879, to provide revenue by taxation, which enacts, " that every private banker and broker, and every unincorporated banking and saving institution, express company, palace-car company, and sleeping-car company, and all corporations incorporated by or doing business in this Commonwealth, except those liable to a tax on capital stock or gross receipts under the provisions of this act, and banks, trust companies, and savings institutions having capital stock, and foreign insurance companies licensed in pursuance of the several acts in relation thereto, shall annually, upon the first Monday of November of each year, make report to the auditor-general, under oath or affirmation, setting forth the entire amount of net earnings or income received by said individual, company, or corporation from all sources during the preceding year; and upon such net earnings or income the said individual, company, or corporation, as the case

[Philadelphia Contributionship *v.* The Commonwealth.]

may be, shall pay into the State treasury for the use of the State, within sixty days thereafter, three per centum upon such annual net earnings or income in addition to the taxes imposed by the preceding sections of this act, etc." The defendant made report for the year ending October 31st, 1879, including therein $27,615$\frac{73}{100}$, derived from the interest on loans of the United States, and $15,375 interest derived from loans of the State of Pennsylvania, which, by the terms of the acts authorizing their issue, were expressly made payable free from State taxes. The tax on these items amounted respectively to $828$\frac{47}{100}$ and $461$\frac{35}{100}$. The defendant claimed exemption from these items of taxation, and also claimed a right to deduct from its gross receipts the sum of $25,948$\frac{75}{100}$, being the amount of losses on certain United States securities which had been purchased above par and had been paid off during the year by the government at par. The tax on the amount of these losses was $778$\frac{47}{100}$. In the settlement of the account the auditor-general and State treasurer disallowed each of these three claims. The corporation having paid the tax under protest, appealed, and the facts above set forth were embodied in a case stated.

The Court below, HENDERSON, J., found in favor of the Commonwealth in the following opinion:

" By agreement of parties the statement of defendant's specifications of appeal are admitted to be true. This, then, is practically a case stated for the opinion of the Court. The Commonwealth claims the right to assess and collect from the defendant the tax upon its annual net earnings or income, under the sixth section of the act of 1st May, 1868, and the tenth section of the act of 7th January (June), 1879. The latter is a transcript of the former. The defendant corporation claims immunity from taxation upon so much of said net earnings or income as is made up of interest received from United States and State bonds. It is not pretended that these bonds—*eo nomine*—are taxable by the State. We have, from this point, followed the line of argument adopted by the defendant's counsel, but in the light of the authorities and of reason we reach a different conclusion.

" The defendant is a private corporation. Its franchise is a grant from the State. It exercises power and enjoys privileges. It is subject to certain limitations. It is liable to taxation. It cannot operate *ultra vires* its charter. The purpose of its creation was not to enable it to invest specially in United States and State bonds; and if it had been, and for no other purpose than to centralize capital, a powerful syndicate to popularize and place the bonds of the State and the National government, what then? Can it be argued

that a tax on its franchise is a tax on these bonds? The two subjects of taxation are as real, separate, and distinct in fact and in law as land and farm property, either of which is a good basis of taxation, and each may be taxed apart from the other.. The existence of the one is in no sense dependent upon the other. The distinction between a tax on the franchise and a tax on property is warranted by decision of the Supreme Court of the United States. 'Accordingly, a savings institution in Massachusets, having a portion of its deposits invested in Federal securities, declared by the act of Congress authorizing their issue to be exempt from taxation under State authority, is liable under the above statute' (the law of Massachusetts imposes a tax on deposits) 'to a tax on account of such deposits as on account of others:' Provident Institution v. Massachusetts, 6 Wallace, 611. 'A statute of a State imposing a tax upon the gross receipts of a railroad company is not repugnant to the Constitution of the United States, though the gross receipts are made up, in part, from the freights received for transportation of merchandise from the State to another State, or into the State from another:' State Tax on Railway Gross Receipts, 15 Wallace, 284, in connection with case of the State Freight Tax, *ibid.*, 232. If this distinction exists, the tax on the net earnings is on the franchise and not on the bonds. We cannot see that the fact that the Philadelphia Contributionship is not a stock company, in any way affects the question. The principle here contended for is not in conflict with the doctrine of the cases relied upon by the defendant's counsel.

"From a practical standpoint the position of the defendant is rendered uncertain when it is so apparent that its effect is to shift all of the corporate expenses from these receipts upon receipts from other sources, and to that extent relieve the franchise or working power of the corporation from taxation. The State creates and controls the franchise, and this is a subject of taxation. We confess at the first glance it does seem that the decisions in Pennsylvania which support the right of the State to levy a collateral inheritance tax on an estate composed of United States bonds are against the position maintained by the defendant's counsel; and our difficulty in not adopting his conclusion is, that this first impression, upon a careful examination of the principles underlying the authorities, ripens into a conviction. This is not a man of straw. It matters not whether the imposition is a tax, a burden, or a bonus; called by either name it could not be imposed on the loans of the United States. In Strode v. Com., 52 Pa. St., 181, Judge Butler, whose

opinion was affirmed by the Supreme Court, in sustaining the validity of the collateral inheritance tax, the estate being composed of United States bonds, said: 'But . . . what is called a collateral inheritance tax is a bonus exacted from the collateral kindred and others, as the condition on which they may be admitted to take the estate left by a deceased relative or testator. The estate does not belong to them, except as a right to it is conferred by the State. Independently of government, no such right could exist.' Again, 'If a condition be that the kindred or legatees shall pay a bonus, this is not a tax or burden imposed on their property, or on the property of anybody else. It is simply the price of the privilege which the State has conferred upon them.' We hold that the tax upon net earnings or income imposed by the law in question is a tax upon the franchises of corporations. And if this be so, the principle decided in and on the reasoning of Strode *v.* Com. sustains the claim of the Commonwealth in this case.

"But there is a further contention. The corporation defendant, in estimating its net earnings, claimed to deduct from its gross receipts its loss on United States securities, purchased above par and paid off by the government at par. This claim was disallowed by the accounting officers.

"The argument in favor of this proposition is not without some plausibility. It is crude and difficult to answer. If a man gets less for a thing than he paid for it, he meets with a loss, and it impairs his capital. But it is the annual net earnings that are taxed. A diminution of capital does not necessarily diminish the annual net earnings. To adopt the rule here contended for would be to cast an uncertain factor into the account, for this is purely a matter of speculation. The tax is assessed upon the net earnings; it rises and falls with them, not with the capital; with the net earnings, not with the earning capacity. If the corporation is inactive, or its capital lies idle, it produces no basis of taxation.

"But it seems to me that the fallacy of the argument is in the assumption that a depreciation in the value of the bonds is a loss to be deducted from the gross receipts. Clearly not, except as the depreciation affects the annual net earnings. We should prefer to say that the premiums paid for the bonds should have been deducted when the investment was made, and might properly have been accounted for and taken from the gross receipts. But certainly the State cannot now settle a profit and loss account running through several years and many transactions. The law requires an

[Philadelphia Contributionship *v.* The Commonwealth.]

annual settlement producing an annual tax, and upon an annual basis.

"We are of the opinion that the objections to the settlement are not valid ; that the settlement was properly made, and therefore find in favor of the plaintiff, the Commonwealth, and against the defendant."

To this ruling exceptions were filed April 25th, 1881, and the same day were overruled and judgment entered.

Defendant then took a writ of error assigning that the Court erred:

*First.* In deciding that the interest received from loans of the United States is subject to tax with the net income or earnings of the defendant, under the acts of May 1st, 1868, and June 7th, 1879.

*Second.* In deciding that the interest received from loans of the State of Pennsylvania, which, by the terms of the acts authorizing their issue, were made payable free from taxes, is subject to tax with the net earnings or income of defendant, under the said acts of Assembly.

*Third.* In deciding that the laws of the State laying a tax on income, including income derived from such United States and State of Pennsylvania loans, are not in conflict with the Constitution of the United States.

*Fourth.* In not allowing the claim of the corporation in estimating its net income to deduct from its gross receipts its losses on United States securities purchased above par and paid off by the government during the year at par.

*W. W. Montgomery* for plaintiff in error.

The question of the right of a State to tax loans of the United States in any shape or form, whether the tax be laid on the *corpus* of the securities *eo nomine*, on the income, or on the taxpayer's property, including such loans, must be regarded as definitely settled against that right by the decisions of the United States Courts from the earliest period : McCulloch *v.* State of Maryland, 4 Wheaton, 316 ; Weston *v.* City Councils of Charleston, 2 Peters, 449 ; Bank of Commerce *v.* N. Y. City, 2 Black, 620 ; Bank Tax Case, 2 Wallace, 200 ; Van Allen *v.* The Assessors, 3 Wallace, 573 ; People *v.* Commissioners, 4 Wallace, 244 ; Hepburn *v.* Carlisle School Directors, 23 Wallace, 480 ; National Bank *v.* Commonwealth, 9 Wallace, 353.

The State has no power to tax its loans issued with a contract of exemption. The constitutional provision forbidding the passage of a State law impairing the obligation of a contract is not the only safeguard : Newark City Bank *v.* The Assessor, 30 N. J. L., 16.

A tax on the income is a tax on the debt; for as soon as interest is due it becomes part of the debt: Opinion of the Justices, 53 N. H., 640; Bank of Kentucky v. Commonwealth, 9 Bush, 46; Monroe Savings Bank v. City of Rochester, 37 N. Y., 365.

The cases cited in support of the theory that this tax is a tax on the franchise and not on the property of the corporation do not bear it out: Savings Society v. Coite, 6 Wallace, 594; Provident Institution v. Massachusetts, 6 Wallace, 611.

The collateral inheritance tax is so evidently a personal tax that Strode v. Commonwealth, 2 P. F. Smith, 181, cannot be an authority here.

If a company pay over par for certain securities because the interest upon them is so high as to warrant such payment, this high rate of interest has been returned as revenue, and the State has had the benefit of taxes collected on it. If the company had invested in securities bearing a low rate of interest at par, and afterward sold them at a premium, this profit would have been included in the income subject to tax.

*Lyman D. Gilbert* and *Henry W. Palmer,* Attorney-General, for defendant in error.

It has been decided that where the tax rested upon the franchise of the banks, the law imposing it was constitutional, although it appeared that a portion of the property of the banks consisted of United States securities: Society for Savings v. Coite, 6 Wallace, 594; Provident Institution v. Massachusetts, 6 Wallace, 611; Insurance Co. v. Loud, 99 Mass. Rep., 146.

When freight has come into the treasury of the company it has lost its distinctive character as freight earned: State Tax on Gross Receipts, 15 Wallace, 284. This doctrine is recognized in Jones *et al.* v. Commonwealth, 19 P. F. Smith, 137, where it is decided that a change of net earnings into dividends creates a new kind of property subject to a new kind of tax. In this case no tax is laid on bonds or even on the gross receipts. This law does not look beyond the company to the source of its earnings.

If any abatement is to be made for loss on premiums, the amount to be subtracted is merely that proportion suffered during the tax year 1879. But no deduction can be made. It knew when it bought the bonds that the sum it gave would never be returned.

The opinion of the Court was delivered by STERRETT, J.

[Philadelphia Contributionship v. The Commonwealth.]

By the tenth section of the revenue act of 1879, which is substantially a re-enactment of the sixth section of the act of May 1st, 1868, certain individuals, companies, and corporations therein mentioned are required to make report to the auditor-general, setting forth the entire amount of net earnings or income received by them from all sources during the preceding year, and pay a tax of three *per centum* thereon for the use of the Commonwealth: P. L., 118.

The corporation, plaintiff in error, being clearly within the provisions of the act, made its return of earnings or income for the tax year ending October 31st, 1879, and included therein $28,615.73 interest on United States bonds, and $15,375 interest on Pennsylvania bonds, both of which items, however, it claimed were exempt from taxation. It was also claimed, that in ascertaining its net earnings or income, the difference between the par value of $307,000 United States bonds, which were called in and paid during the year, and the price at which they were purchased several years before, should be treated as a loss and be deducted from its gross receipts. The accounting officers having refused to allow any abatement on account of either of these three items, the tax thereon, amounting to $2068.19, was paid under protest and an appeal taken from the settlement. The decision of the Court below was also adverse to the plaintiff in error on the points in controversy. The questions thus presented by the record are: Whether the income derived from either class of bonds is exempt from taxation, and whether the difference between the price paid for the United States bonds and their par value should be regarded as a loss and be deducted from the gross receipts.

It may be conceded that the bonds, as such, are not taxable by the Commonwealth; but the tax in question is not laid on the bonds. It is a tax on the corporate franchise of the plaintiff in error, measured by its net earnings. The right of the State to impose a tax on the franchise of any corporation that is indebted to it for existence and protection is too clear for argument. If the right exists, as it undoubtedly does, the manner of its existence must be left to the wisdom of the legislature; and perhaps no standard or measure of taxation can be adopted that will operate more justly and equitably than a *per centum* on net earnings or income.

The interest received by the company on the bonds undoubtedly formed a part of its income, and while the bonds themselves are exempt from taxation by virtue of the laws under which each class respectively was issued, it does not follow that the same immunity adheres to the money paid

from time to time in discharge of the interest due on the securities. When so paid it loses the non-taxable characteristic of the bond on which it accrued, and should thenceforth be treated as any other species of income derived from other sources. But, as already intimated, the tax is not laid on the money and other receipts of the company. Its net earnings or income is resorted to simply as a just measure of the tax to be paid for the enjoyment of its corporate franchise.

There is an obvious difference between a direct tax on the property of a corporation and a franchise tax measured by its earnings, which, proximately at least, represent either the value of the franchise granted or the extent of its exercise. The distinction has been repeatedly recognized by both Federal and State Courts. In Society for Savings *v.* Coite, 6 Wallace, 594, corporations of the class to which the plaintiff in error in that case belonged, were required to pay annually a sum equal to three-fourths of one per cent. on the total amount of their deposits; and it was held that this was a valid franchise tax and not a tax on property, and that the society had no right to claim exemption therefrom to the extent of its deposits invested in non-taxable securities of the United States. Under a similar law in Massachusetts, it was held that a savings institution having a portion of its deposits invested in Federal securities was liable to a tax on account of such deposits as fully as on account of other deposits, notwithstanding the securities were declared, by the act of Congress under which they were issued, to be exempt from taxation under State authority: Provident Institution *v.* Massachusetts, 6 Wallace, 611.

A distinction somewhat similar in principle is made in the cases of State Freight Tax and State Tax on Railway Gross Receipts, 15 Wallace, 232 and 284, in the latter of which it is held that a statute imposing a tax on the gross receipts of railway companies is not repugnant to the Constitution of the United States, though the receipts are made up in part of the freights received from inter-state transportation of merchandise.

The difference between the amount paid for the United States bonds and their par value cannot in any proper sense be regarded as a loss; but if it were otherwise, the plaintiff in error is not entitled to the deduction claimed. A decrease of capital does not necessarily diminish the annual net earnings. It is the latter that has been adopted as a just measure of the tax imposed on the franchise. The contention of the plaintiff in error on this point has been so fully answered by the learned judge of the Common Pleas,

in the concluding portion of his opinion, that further comment is unnecessary.

Judgment affirmed.