## Weber Estate

*Arnold, Bricker, Beyer & Barnes*, for accountants.
*Louis Weisman*, for Commonwealth.

APPEL, J., May 11, 1972.—The register of wills dis-

allowed certain inheritance tax deductions claimed by the accountants. By proper proceedings his action is before us for disposition. Evidence presented at a hearing establishes that decedent's residence at 421 West Vine Street, Lancaster, Pa., comprising a part of the residuary estate, had not been lived in for approximately seven years prior to her death on March 14, 1971. The property was offered for sale as soon after death as the exigencies of the situation permitted. A sale culminated from diligent and assiduous effort. Settlement was made on September 24, 1971.

The executors' brief states that the following items were disallowed as deductions:

| | |
|---|---|
| 1. Frank Wallace—cutting grass and cleaning yard | $ 20.00 |
| 2. Frank Wallace—cleaning house and mowing grass—June 21, 1971 to September 16, 1971 | 52.00 |
| 3. Clarence Wilson—hauling rubbish | 7.00 |
| 4. U.G.I. Corporation—gas bill | 5.53 |
| 5. City of Lancaster—water and sewer | 1.25 |
| 6. U.G.I. Corporation—final gas bill | 14.45 |
| 7. George M. Helm—roof repair bill | 12.75 |
| | $112.98 |

The tax on this sum at 15 percent would be $16.95, not an amount of great significance. The importance of the matter is, however, of broad significance because neither counsel has directed our attention to any case determinative of the question and it is a matter which may arise frequently.

The Commonwealth states the following in its brief:

"There would appear to be a dearth of cases where the problem is discussed at any length but, of note, are the commentary and cases cited in the 1971 Revision

of Grosman and Smith's volume on 'Pennsylvania Inheritance Tax' at section 611 through and including section 611-2. In section 611-2 the authors of that text cite Anderson Estate, 77 D. & C. 74 and Schott Estate, 11 D. & C. 373, and indicate that in allowing deductions for inheritance tax purposes it becomes a question of determining whether it is the estate or the distributee who is *primarily* benefited by the particular expense."

In Anderson, the devisee "did take possession and occupancy thereof shortly after the death of decedent" (page 85); therefore, he primarily benefitted. Schott's Estate contains a discussion of whether the carrying charges between death and sale are chargeable to the real estate or to the residue. The case is of importance by its application of the principle that he who benefits must also bear the burdens.

The nature and effect of inheritance tax as described by. Mr. Justice Stern in Tack's Estate, 325 Pa. 545 (1937), is important to our consideration of this case. He said, at page 548:

"The right to transmit or to receive property by will or through intestacy is not a natural right but a creature of statutory grant. Students of law agree that the State has the right to declare an escheat of all the property of a decedent, and therefore, as the price of allowing a legatee, devisee or heir to inherit, it may appropriate to itself any portion of the property which it chooses to exact. Whether this appropriation be designated an inheritance tax, an estate tax, a succession tax, a death duty, or otherwise howsoever, it is not, in its essence, a tax on the decedent's property or any component part of it, or on the transaction of transferring it as in the case of a transmission of possession or title inter vivos, but an excise on the privilege of inheritance. It .

is really not a tax at all in the ordinary meaning of the word, but rather a distributive share of the estate which the State retains for itself. Its true nature is not changed by the fact that it is assessed and measured by the value of the property, or that it is paid by legatees and devisees in proportions allocated to their respective inheritances."

In the present situation all of the expenses were requisite to the sale of the real estate. They benefitted the residuary legatee only to the extent that the proceeds from the sale of the property flow to her. Because of the legatee's relationship to decedent and because of the inheritance tax law of Pennsylvania, 85 percent of the proceeds flow to her and, in effect, 15 percent flow to the Commonwealth. Since the Commonwealth has accepted the sales price of the real estate as the appraised value and since the expenditures were an integral part of producing a buyer who would pay that sum of money, we are unable to conclude that the residuary legatee should bear the expenses to the extent of 100 percent. Her share of the proceeds is 85 percent, the Commonwealth's share is 15 percent. These are the percentages which accurately reflect the benefit to the residuary legatee and they are affected only by the allowance of the items claimed as deductions.

It appears that the sole intent of the accountants and the residuary legatee from the moment of the grant of letters was to sell the real estate. There has been no contention that an overlong time was taken to effect the sale. There can be no assertion that Elizabeth F. Weber benefitted from the use of the property because she had no use of it.

For the reasons stated, we allow the claimed deductions. Our award of inheritance tax is without interest because of this litigation. It is based on a charitable exemption certificate being obtained and filed.