## Wasserman Estate

*Louis E. Levy,* for exceptants.
*Catherine R. Barone,* for Commonwealth.

PAWELEC, *A.J.,* January 24, 1977—

## SUR APPEAL FROM THE INHERITANCE TAX ASSESSMENT

Presently before the court is an appeal from the inheritance tax assessment. The issue arose as a result of the death of Edith Stix Wasserman, settlor and life tenant of an inter vivos trust.

The facts are undisputed. On May 19, 1926, settlor transferred certain assets to her trustee to pay the income therefrom to settlor for life, and upon her death, the principal as she might by her will appoint, and in default of such appointment, was to be paid over to such of her children and issue of deceased children as may be then living, equally absolutely, per stirpes.

By instrument dated April 26, 1943, settlor renounced her right to exercise the testamentary power she reserved herself in the deed. Settlor died on June 28, 1972. The trust terminates and the principal is now distributable in equal shares to the four children of settlor.

The Commonwealth has assessed an inheritance tax on the principal of the trust passing to the chil-

dren at the rate of six percent, the rate of tax in effect on the date of death of settlor. Appellant, executor of decedent's estate, contends this is unconstitutional in that it results in the imposition of a retroactive tax and is violative of the Pennsylvania Constitution, art. I, §17 and art. VIII, §2. It argues that the rate of two percent, which was in effect in 1943 when settlor renounced her testamentary power and the interests of the remaindermen vested, is correct.

The Commonwealth's imposition of a six percent tax is based on the applicability of the Inheritance and Estate Tax Act of June 15, 1961, P.L. 373, secs. 103(2), 401, 221(a), 224, 72 P.S. §§2485-103, 401, 221, 224.

These sections provide:

Section 103(2), 72 P.S. §2485-103(2), provides that the act is applicable to: "(2) Inter vivos transfers made by decedents dying on or after that day regardless of the date of transfer."

Section 401, 72 P.S. §2485-401, provides: "When the decedent was a resident, the tax shall be computed upon the value of the property, in excess of the deductions hereinafter specified, at the rates in effect at the transferor's death."

Section 221(a), 72 P.S. §2485-221(a), provides: "All transfers of property, specified in sections 222-226, which are made during his lifetime by a resident or a non-resident, to the extent that they are made without valuable and adequate consideration in money or money's worth at the time of transfer, are subject to tax under this act."

Section 224, 72 P.S. §2485-224, provides:

"A transfer conforming to section 221(a), and under which the transferor expressly or impliedly reserves for his life or any period which does not in fact end before his death,

"(1) the possession or enjoyment of, or the right to the income from, the property transferred, or

"(2) the right, either alone or in conjunction with any person not having an adverse interest, to designate the persons who shall possess or enjoy the property transferred or the income therefrom, is subject to tax under this act."

The law is well settled that beneficiaries of a decedent's estate have no vested right to receive his property. Whatever rights they have are derived from and governed by statute. The beneficiaries, therefore, take under and subject to the applicable statutes. In fact, the State may validly escheat all of a decedent's net estate without violating either the Pennsylvania or the United States Constitutions: Irving Trust Co. v. Day, 314 U.S. 556 (1942); Tack's Estate, 325 Pa. 545, 191 Atl. 155 (1937); Kirkpatrick's Estate, 275 Pa. 271, 119 Atl. 269 (1922); Carpenter v. Com. of Pennsylvania, 58 S. Ct. 127 (1855). In Irving Trust Co. v. Day, the court stated:

"Rights of succession to the property of a deceased, whether by will or by intestacy are of a statutory creation, and the dead hand rules succession only by sufferance. Nothing in the Federal Constitution forbids the legislature of a state to limit, condition, or even abolish the power of testamentary disposition over property within its jurisdiction." 314 U.S. at 562.

In Tack's Estate, the Pennsylvania Supreme Court held that:

"The right to transmit or to receive property by will or through intestacy is not a natural right but a creature of statutory grant. Students of the law agree that the State has the right to declare an escheat of all the property of a decedent, and

*therefore, as the price of allowing a legatee, devisee or heir to inherit, it may appropriate to itself any portion of the property which it chooses to exact. . . .* (Emphasis supplied.)

". . . The court further said [in Strode v. Commonwealth, 52 Pa. 181] that the estate passed into the hands of the executor for administration, and is taxed in his hands as an estate. The law takes every decedent's estate into custody, and administers it for the benefit of creditors, legatees, devisees and heirs, and delivers the residue that remains, after discharging all obligations, to the distributees entitled to receive it. One of the legal obligations to which every estate that is to go to . . . kindred is subject, is this . . . duty [tax] to the Commonwealth. And it is not until this work of administration is performed, that the right of succession attaches. . . . ' " 325 Pa. at 548, 549.

Carpenter v. Com. of Pennsylvania involved the question of the constitutionality of the first Pennsylvania inheritance tax. The U.S. Supreme Court upheld the tax and stated:

"But until the period for distribution arrives, the law of the decedent's domicil attaches to the property. . . . The rights of the donee are subordinate to the conditions, formalities, and administrative control, prescribed by State in the interests of its public order, and are only irrevocably established upon its abdication of this control, at the period of distribution. If the State, during the period of administration and control by its tribunals and their appointees, thinks it fit to impose a tax upon the property, there is no obstacle in the Constitution and laws of the United States to prevent it." 58 S. Ct. at 129.

In other words, it seems clearly settled that testamentary legacies and gifts, even though the latter may constitute what is known as vested property interests or rights, are subordinate during the administration of the estate to the costs of administration, debts of the decedent and death taxes: Wright Estate, 391 Pa. 405, 138 A. 2d 102 (1958).

While the instant case involves irrevocable trusts which pass outside of the estate, that distinction does not affect the Commonwealth's power to tax these trusts as part of the settlor's estate.

In Todd Trust, 358 Pa. 530, 58 A. 2d 135 (1948), and Glosser Trust, 355 Pa. 210, 49 A. 2d 401 (1946), the court upheld the imposition of the inheritance tax on property in which the settlor retained a life interest since the remaindermen only acquired a right to enjoy the property by virtue of the settlor's death. While those cases are not directly on point with the issue here, the language of the cases clearly shows that the taxable event is the date of settlor's death and not the date on which an irrevocable trust is established.

In Todd, the court stated that property such as the trust in the instant case is essentially similar to property which devolves by will or intestacy upon the death of the owner: 358 Pa. at 533.

It is undisputed that the principal of this trust was subject to an inheritance tax upon the death of settlor under the law in effect in 1923, when it was created, and in 1943, when it vested. Thus, this case does not involve the retroactive taxation of property not previously taxable.

It is true that the statutes prior to the Act of 1961 were silent as to which rate applies where it has changed between the date of the inter vivos transfer and the date of death. This vacuum was filled by

case law. However, those cases are no longer binding since the current statute expressly provides which rate is to be applied. Appellant cites Houston's Estate, 276 Pa. 330, 120 Atl. 267 (1923), as determinative of the present issue. We do not agree. Houston was not decided on constitutional grounds but on the principles of taxation and the statutes of the time. Also, the authority to tax at the rate in effect at settlor's death, lacking there, is present here. See Jones Estate, 25 Fiduc. Rep. 643 (O.C. Montg. 1975).

Appellant further argues that the interests of the parties were vested in 1943, and any subsequent change in the tax rate cannot be constitutionally applied.

The law in regard to determining the constitutionality of a statute was enunciated in Land Holding Corp. v. Board of Finance and Revenue, 388 Pa. 61, 72, 130 A. 2d 700 (1956), as follows:

"In Sablosky v. Messner, supra, we said (pp. 58, 59): '. . . "It is axiomatic that he who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so. . . . All presumptions are in favor of the constitutionality of acts and courts are not to be astute in finding or sustaining objections to them:. . . ": Hadley's Case, 336 Pa. 100, 104, 6 A. 2d 874. In Kelley v. Baldwin, Auditor General et al., 319 Pa. 53, 54, 179 A. 736, we said: "An act may not be declared unconstitutional unless 'it violates the Constitution clearly, palpably, plainly; and in such manner as to leave no doubt or hesitation in our minds': Sharpless v. Mayor, 21 Pa. 147, 164; Tranter v. Allegheny Co. Authority, 316 Pa. 65, 75.".'"

The Pennsylvania inheritance tax is a tax im-

posed on the privilege of inheriting and is imposed not on the property but on the right of succession or the privilege of receiving property upon the death of another: Tack's Estate, supra.

By the Act of 1961, our legislature specifically imposed an inheritance tax at the rate in effect on the date of the death of the settlor on trusts in which the settlor retained a life estate with the remainder passing at his death. This is just and certainly not arbitrary. It is logical to tax property whose enjoyment by remaindermen is postponed until the death of the transferor/settlor at the same rates as other property passing as a result of his death.

The power of the legislature to do this is supported by Jewell's Estate, 235 Pa. 119, 122, 83 Atl. 610 (1912), where the court said:

". . . [N]o authority has been cited for us, and we know of no rule or principle which forbids the Legislature to make changes in the statutory law affecting the time or manner of assessing an inherited estate, and incidentally to affect the sum of the tax to be paid, at any time before the estate comes into the actual possession of the person liable for the tax prior to an actual payment thereof."

The court's holding in Jewell's Estate was cited with approval in Jeffery's Estate, 333 Pa. 15, 3 A. 2d 393 (1939). In Jeffery's, the settlor established inter vivos trusts by deeds in 1928. The settlor died on November 10, 1935. The trusts were subject to Federal estate tax upon the settlor's death. A question arose as to the apportionment of the estate taxes among the beneficiaries of the estate and of the trusts. The court held that the Tax Apportionment Act of July 2, 1937, P.L. 2762, 20 P.S. §§831 et seq., which was passed on July 2, 1937, gave the orphans' court the power to appor-

tion a share of the taxes on each trust. The court held the said act applicable even though the settlor had died and the accounts came up for audit before the act was passed. The court stated that since the adjudication was not filed until December, the transition of title resulting from the adjudication was not complete and that, therefore, the new statute controlled.

The court went on to say that "such interpretation of the statute does not take away vested rights in violation of constitutional limitations [citations omitted]. It is not important to consider whether it should be classified as retroactive or prospective; its terms show that it was clearly and manifestly intended to be applied to facts such as appear in the record." Id. at 20, 21.

In Jeffery's, as in the instant case, irrevocable inter vivos trusts were of such a nature that they were included in the settlor's estate for estate inheritance tax purposes. The taxation of the trusts was unquestioned in both cases. In the case at bar, a change in the law increased the tax rate and, therefore, increased the taxes due. In Jeffery's, the law was changed so that the trusts bore a share of the taxes whereas prior to the Apportionment Act the residuary estate bore the entire tax burden. Therefore, as to the beneficiaries of the trusts, this could be termed an increase in taxes.

As the court in Jeffery's found no difficulty in upholding the Apportionment Act in that case, we similarly have no difficulty in upholding the applicability of the current tax rate in the case at bar.

In a similar case, the United States Supreme Court upheld the application of the Federal estate tax rate effective on date of death to a transfer made when the rate was lower: Milliken v. U.S., 283 U.S.

15 (1931). Although this decision is not binding as to the questions raised under the Constitution of the Commonwealth, the court's decision is most persuasive.

Appellant argues that this case was limited by Welch v. Henry, 305 U.S. 134 (1938), whose holding was adopted by our court in Com. v. Budd Company, 379 Pa. 159, 108 A. 2d 563 (1954).

A review of those cases reveals that while those cases do limit the legislature's ability to retroactively change certain taxes in some instances, they do not prohibit the type of changes at issue either in Milliken or presently before this court. See Jewell Estate, supra.

Here the settlor established a trust but retained a life interest in its income. In 1943, the remaindermen's interests vested. Appellant argues that this event fixed the date on which the tax rate is determined. Yet, no taxable event took place in 1943 with respect to inheritance taxes. Neither the settlor nor the remaindermen incurred any tax liability on that date. The Commonwealth had no right to demand or collect any tax at that time. The only taxable event which occurred with respect to this trust occurred on the settlor's death when the right to the enjoyment of the trust passed to the remaindermen. That is the date when the Commonwealth's right to collect inheritance taxes arose. The date of settlor's death, therefore, is the date which should logically fix the rate of tax in this case.

We conceive of the act or of the legislature in fixing the date of death as determinative of the rate of tax as being reasonable and logical and not arbitrary.

Accordingly, we enter the following:

## DECREE

And now January 24, 1977, the appeal is dismissed.

## SUR EXCEPTIONS TO OPINION AND DECREE OF HEARING JUDGE

SILVERSTEIN, *J.*, December 30, 1977—This matter comes before the court on exceptions filed by the estate to the opinion and decree of Pawelec, *A.J.*, sur appeal from the inheritance tax assessment.

Edith Stix Wasserman died on June 28, 1972, and the account of the executor was confirmed by an adjudication of this court dated January 17, 1977. In that adjudication, the awards noted therein were made subject to the payment to the Commonwealth of Pennsylvania of such additional transfer inheritance tax as may be found to be due and as the same may be duly appraised and assessed.

By an instrument dated May 19, 1926, decedent transferred certain assets to her trustee to pay the income therefrom to the settlor for her lifetime, and upon her death, the trustee was to distribute the principal as the settlor might appoint by her will. The settlor renounced her right to exercise her power of appointment by an instrument dated April 26, 1943, and as a result of her death the trust terminated and the principal became distributable to the four children of the settlor under the default provisions of the deed of trust.

The Commonwealth of Pennsylvania assessed an inheritance tax on the principal passing to the four children at a rate of six percent, the rate effective at the date of death of the settlor. The executor

of the estate appealed from this assessment.

We have carefully read the adjudication of the auditing judge in light of the earnest argument and brief of counsel for exceptant, but nevertheless find that the learned auditing judge was correct in his interpretation of the applicable statutes; nor can we add anything with profit to his well-reasoned adjudication. The settlor reserved the income from the trust for her lifetime and even though her relinquishment of her power to appoint by will vested the remainder in those named in the deed of trust, the operative fact is that the taxable event occurred upon her death. The principal purpose of our current collateral inheritance tax law is to impose a tax upon a variety of lifetime transfers of interests in property which, by reasons of the limitations in the instruments of transfer, postpone the possession and enjoyment of the property until the death of the transferor and in those cases are substitutes for testamentary dispositions.

Accordingly, the exceptions to the opinion and decree are dismissed.