## Tack's Estate.

Argued January 11, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Edward P. Loughran,* with him *John W. Speckman,* for appellant.

*Edward Shippen Morris,* Special Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, *E. Russell Shockley,* Deputy Attorney General, and *Gilbert Cassidy, Jr.,* for Commonwealth.

OPINION BY MR. JUSTICE STERN, March 22, 1937:

Adele G. Tack died in 1934; her will was probated at Philadelphia. The Register of Wills appraised her net estate in the sum of $933,166.06, and assessed the collateral inheritance tax at 10% or $93,316.60. Included among the assets were sixty bonds of $1,000 each issued by the Delaware River Bridge Joint Commission (Philadelphia-Camden 4¼% Serial Bridge Bonds due September 1, 1951) appraised at $63,375 with accrued interest of $191.25, or a total of $63,566.25. The executors and the residuary legatees appealed from the appraisement so far as it covered these bonds, but the court below sustained the action of the Register of Wills.

The question involved is whether the bonds of the Delaware River Bridge Joint Commission are subject to the inheritance tax imposed by the Act of June 20, 1919, P. L. 521, as amended. They were issued under authority of identical acts of the States of Pennsylvania and New Jersey, the Pennsylvania statute being that of June 12, 1931, P. L. 575, article XI of which provides inter alia: "the bonds or other securities or obligations issued by the commission, their transfer and the income therefrom (including any profits made on the sale thereof), shall, at all times, be free from taxation within the Commonwealth of Pennsylvania and the State of New Jersey."[1] The bonds themselves contained a clause that

---

[1] The New Jersey Act is Chapter 391, Laws of 1931 (p. 1219).

"It is provided by the Statute of the Commonwealth of Pennsylvania and the Statute of the State of New Jersey that this Bond is exempt from taxation."

The Act of June 20, 1919, P. L. 521, is entitled "An Act Providing for the imposition and collection of certain taxes upon the transfer of property passing from a decedent. . . ." Section 1 imposes a tax "upon the transfer of any property, real or personal, or of any interest therein or income therefrom . . ." in the cases specified in subsequent provisions. Section 45 provides that "The word 'transfer,' as used in this act, shall be taken to include the passing of property, or any interest therein, in possession or enjoyment, present or future, by distribution, by statute, descent, devise, bequest, grant, deed, bargain, sale, or gift."

No question is raised as to the constitutional *power* of the State of Pennsylvania to exempt these bonds from all forms of taxation, but merely whether the Act of 1931, in exempting their *transfer,* included thereby an exemption from the inheritance tax provided by the Act of 1919. More specifically, therefore, the inquiry resolves itself into the question: Is the tax imposed by the Act of 1919 a tax on the *transfer* of the bonds?

At first blush this question would probably be answered in the affirmative because of the express use of the word "transfer" in both the title and the body of the act, and because the statute has generally been referred to as the "Transfer Inheritance Tax Act." But in considering whether the tax imposed by the Act of 1919 is a tax upon the transfer of the bonds the problem is not one of nomenclature but of the real nature of an inheritance tax. A study of the origin of such taxation, and of the cases construing our own legislation over a course of many years, makes it readily apparent that the inheritance tax is not one on the *transfer* of specific property, as such term is ordinarily understood, but is of an entirely different nature.

The right to transmit or to receive property by will or through intestacy is not a natural right but a creature of statutory grant. Students of law agree that the State has the right to declare an escheat of *all* the property of a decedent, and therefore, as the price of allowing a legatee, devisee or heir to inherit, it may appropriate to itself any portion of the property which it chooses to exact. Whether this appropriation be designated an inheritance tax, an estate tax, a succession tax, a death duty, or otherwise howsoever, it is not, in its essence, a tax on the decedent's property or any component part of it, or on the transaction of transferring it as in the case of a transmission of possession or title inter vivos, but an excise on the privilege of inheritance. It is really not a tax at all in the ordinary meaning of the word, but rather a distributive share of the estate which the State retains for itself. Its true nature is not changed by the fact that it is assessed and measured by the value of the property, or that it is paid by legatees and devisees in proportions allocated to their respective inheritances.

The inheritance tax acts of Pennsylvania, beginning with that of April 7, 1826, P. L. 227, have uniformly been construed from this standpoint. Thus it has been held, for example, that a bond of the United States is properly included in the assessed valuation of an estate for collateral inheritance tax purposes, although the State could not, under our Federal system, tax the bond itself in any manner: *Strode v. Commonwealth,* 52 Pa. 181. An Act of Congress provided that all bonds of the United States should be exempt from taxation by or under State or municipal authority.[2] The court pointed out in the *Strode* case, however, that "The act (imposing the collateral inheritance tax) operates only on the *residue* of the estate after paying debts and charges, and, theoretically, that residue is always a balance in money. The administration account always exhibits a balance

---

[2] Act of February 25, 1862, 31 USCA § 742, R.S. § 3701.

in cash not in specific goods, whether bonds or horses; and though an heir may take bonds or horses as cash, the account must show, and always does show, a cash balance. That is the fund taxed by this law, and not the bonds or other chattels which may have produced the fund." The court further said that the "estate passed into the hands of the executor for administration, and is taxed in his hands *as an estate.* The law takes every decedent's estate into custody, and administers it for the benefit of creditors, legatees, devisees and heirs, and delivers the residue that remains, after discharging all obligations, to the distributees entitled to receive it. One of the legal obligations to which every estate that is to go to collateral kindred is subject, is this 5 per cent duty to the Commonwealth. And it is not until this work of administration is performed, that the right of succession attaches. The distributees may, indeed, consent to accept certain goods and chattels in specie without conversion, as is frequently done in settlement of estates; but such arrangement in no case affects the theory of the law, that the estate is first to be administered and then enjoyed." The basis of this decision is that the State takes its appropriate share from the clear value of the estate for distribution, and that the nature or identity of the component parts of the estate from which such net balance results is wholly immaterial.

In *Orcutt's Appeal,* 97 Pa. 179, 185, it was said: "The tax does not attach to the very articles of property of which the deceased died possessed. It is imposed on what remains for distribution after expenses of administration, debts and rightful claims of third parties are paid or provided for. It is on the net succession to the beneficiaries and not on the securities in which the estate of the decedent was invested."

In *Commonwealth v. Herman,* 16 W. N. C. 210, part of a decedent's estate consisted of a certificate for $10,000 of a Pennsylvania State loan, the certificate stipulating, in accordance with the provisions of the act under which

it was issued, that it was "exempt from taxation for all State, municipal, or local purposes whatever in Pennsylvania." Certainly no exemption could be expressed more comprehensively. Nevertheless the court held, in an able opinion by SADLER, President Judge of the Common Pleas of Cumberland County, that the certificate of loan was subject to the collateral inheritance tax, saying that the State "may properly provide that a portion of the estate should escheat to it and the remainder go to the heir; and the portion which the State reserves or compels the administrator or executor to pay to it, is not a tax upon the specific property, of which decedent may die seised, or which the collateral heirs, legatee or devisee may take, but a tax or duty levied upon the *estate as such,* which may remain after the debts and expenses of administration are provided for; and in construing its character it is proper to remember that it is connected with and is a part of the legislation of the Commonwealth in reference to the administration and transmission of estates of decedents."

In *Finnen's Estate,* 196 Pa. 72, it was said: "That which the legatee gets and keeps is the aggregate sum bequeathed, less the amount of the tax. The tax must be retained by the person who has the decedent's property in charge. It is, therefore, not a tax upon the property or money bequeathed but a diminution of the amount that otherwise would pass under the will . . ., and hence that which the legatee really receives is not taxed at all. It is that which is left after the tax has been taken off."

In *Jackson v. Myers,* 257 Pa. 104, the same thought was substantially repeated, the court saying that the State "is entitled to its share of the estate before the claims of heirs or devisees can be recognized or satisfied. The latter take only such part of the decedent's estate as remains after the payment of the tax, which is not levied upon the inheritance or the legacy but, as already observed, upon the estate of the decedent. What

passes to the heir or devisee, and to which he acquires title, is the portion of the estate remaining after the payment and satisfaction of the collateral tax."

In *Kirkpatrick's Estate,* 275 Pa. 271, the court said, through the present Chief Justice: "It is clear that the Act of 1919 did not impose a tax on property, but requires payment to be made from the estate of a decedent for the right of succession or the privilege of receiving at death the property possessed by a decedent. This right or privilege is purely a creature of statutory law. It did not exist at common law, and individuals possess no natural right to such succession; the sovereign authority that gives it may demand payment for the gift. . . . It follows that the State has power to take the value at death without any deductions, or the value actually received by the distributee as the measure to determine this excise payment . . . the Act of 1919 was intended as a comprehensive scheme to lodge an excise against the right of succession . . . ; though payment of the excise demanded therefor may be borne ultimately by the estate received by such distributees, the thing that gives rise to the creation of this excise is the state law of inheritance."

In *Frick's Estate,* 277 Pa. 242, 250, it was said: "It is clear . . . that the tax is to be levied upon 'the clear value' of the entire estate. . . . The appraisement to be made is not of the legacies or devises but of the whole estate of a decedent; the debts and expenses of administration are not to be deducted from any particular gift or gifts, but from the whole estate. . . . We therefore conclude that it is the entire value of the estate, less the credits specified, which forms the basis of the tax, and not the amounts received by the particular legatees; . . . ." It is true that this case was reversed by the Supreme Court of the United States *(Frick v. Pennsylvania,* 268 U. S. 473), but the reversal was based upon a practical consideration of the extent to which a decedent's estate should be subject to taxation by both the

state of domicile and other states in which personal property of the decedent might be located at the time of his death. The theory which the Supreme Court of Pennsylvania adopted as the basis of construction of the inheritance tax laws of the State was in accord with that which has uniformly controlled such interpretation.

In *Shugars v. Chamberlain Amusements Enterprises, Inc.*, 284 Pa. 200, the Direct Inheritance Tax Act of July 11, 1917, P. L. 832, and the Act of 1919 were discussed. The Court said: "Though commonly called a direct inheritance tax, yet, under the Act of 1919, the thing taxed was the right of succession or the privilege of receiving at death the property possessed by a decedent either by will or under the intestate laws. The fundamental thought was to levy a toll against the passing of property of citizens going by reason of death to others in whatever light the taking may be viewed."

The cases in the Supreme Court of the United States analyze the nature of inheritance tax legislation in much the same manner as the courts of our own State. Thus it was held in *Plummer v. Coler*, 178 U. S. 115, as it was in *Strode v. Commonwealth*, supra, that a state may validly impose an inheritance tax on a legacy consisting of United States bonds, even though admittedly the state could not directly tax such obligations, and even though the act of Congress under which the bonds were issued[3] stipulated that they should be exempt "from taxation *in any form* by or under state, municipal or local authority." It is to be noted that there was a specific bequest of the bonds in that case. The court said: "We think the conclusion, fairly to be drawn from the state and Federal cases, is, that the right to take property by will or descent is derived from and regulated by municipal law; that, in assessing a tax upon such right or privilege, the State may lawfully measure or fix the amount

---

[3] Act of July 14, 1870, 16 Stat. at Large 272.

of the tax by referring to the value of the property passing; and that the incidental fact that such property is composed, in whole or in part, of Federal securities, does not invalidate the tax or the law under which it is imposed. . . . So that we return to the authorities, by which it has been established that a tax upon . . . the privilege of taking under the statutes of wills and of descents, is a tax not upon United States bonds if they happen to compose . . . a part of the property of a decedent, but upon rights and privileges created and regulated by the State." To the same effect are *Orr v. Gilman*, 183 U. S. 278; *Greiner v. Lewellyn*, 258 U. S. 384; *Stebbins v. Riley*, 268 U. S. 137.

It thus clearly appears that even though the Act of 1919 in its title and enacting clauses designates itself as an act imposing a tax on the "transfer" of property, a closer study reveals that the tax imposed by it is not on the "transfer" of securities as one would ordinarily use that term in connection with stocks or bonds, but is a tax on the succession or right of inheritance of a decedent's estate, the tax being measured by the clear value of the estate determined by appraising the assets of which it is composed and deducting the debts and the costs of administration, the nature of the items constituting the estate being wholly immaterial, so that, as we have seen, even securities of the Federal government, which cannot constitutionally be taxed by a State, as well as bonds which are expressly exempted by the legislation authorizing their issue from *all forms of taxation* whatever, are nevertheless properly included in the appraisement or assessed value of the decedent's estate upon which the amount of the inheritance tax is computed. Therefore, and in view of the well-known principle that exemptions from taxation must be strictly construed, it cannot be held that the legislature, in the Act of 1931, intended by the word "transfer" to give to the Delaware River Bridge bonds an immunity from inheritance taxation under the Act of 1919. Had it in-

tended to grant so unique an exemption, it would no doubt have used less ambiguous language.

The decree of the court below is affirmed; costs to be paid by appellants.