Arthurs *v.* Pittsburgh et al., Appellants.

Argued November 18, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*David Stahl,* Assistant City Solicitor, with him *J. Frank McKenna, Jr.,* City Solicitor, for appellants.

*Howard I. Scott,* with him *William A. Meyer,* and *Kountz, Fry & Meyer,* for appellees.

OPINION BY WOODSIDE, J., January 21, 1958:

This is an appeal from an order of the Court of Common Pleas of Allegheny County sitting in equity which enjoined and restrained the City of Pittsburgh and its treasurer from imposing and collecting an earned income tax on the net profits of plaintiffs' busi-

ness attributed to the sale and purchase of Pennsylvania municipal authority bonds.

Section 15 of the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 PS §318 provides as follows:

"Exemption from Taxation.

"The effectuation of the authorized purposes of Authorities created under this act shall and will be in all respects for the benefit of the people of the Commonwealth of Pennsylvania, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and since such Authorities will be performing essential governmental functions in effectuating such purposes, such Authorities shall not be required to pay any taxes or assessments upon any property acquired or used by them for such purposes, *and the bonds issued by any Authority, their transfer and the income therefrom, (including any profits made on the sale thereof) shall at all times be free from taxation within the Commonwealth of Pennsylvania."* (Emphasis supplied).

Under the authority of the Act of June 25, 1947, P. L. 1145, as amended, 53 PS §6851-6858, popularly known as the "Tax Anything Act", the City of Pittsburgh enacted an earned income tax ordinance. This ordinance imposed a tax on salaries, wages, commissions and other compensation, and on net profits earned from businesses, professions and other activities.

The plaintiffs are members of a brokerage partnership engaged in the purchase, sale and exchange of stocks, bonds and other securities including, inter alia, the sale and exchange of bonds issued by Pennsylvania municipal authorities. They are subject to the aforesaid earned income tax, but question the right of the city to impose it on that part of their net profits attributed to the sale and purchase of municipal authority bonds.

· The business of the plaintiffs, insofar as concerns the bonds of Pennsylvania municipal authorities, is carried on in the following manner. The authority bonds are negotiable bearer bonds with interest coupons. The brokerage firm of which the plaintiffs are partners buys the bonds for its own account, but the purchases are for resale and not for investment. Purchases are made in two ways. The firm may be part of a group of underwriters of an original bond issue, and the bonds purchased are resold to private individuals or to banks. The firm may also buy blocks of bonds from other brokers for resale. The bonds are kept in the firm's inventory until resold, and the firm takes off coupons for any interest that may come due while it holds the bonds.

The plaintiffs contend that by reason of the tax exemption provision of section 15 of the Municipality Authorities Act of 1945, supra, the city is prohibited from imposing the earned income tax on the net profits realized from the sale of said bonds and from their coupons.

That section provides, as we have noted above, that "the bonds issued by any Authority, their transfer and the income therefrom (including any profits made on the sale thereof) shall at all times be free from taxation within the Commonwealth of Pennsylvania."

This is not only an expression of policy concerning state taxes, but is a definite limitation by the sovereign upon the power of its political subdivisions to tax. A political subdivision of the Commonwealth has no power to impose a tax except such power as is conferred upon it by the sovereign, which can limit the power in any way that will not violate the Constitution.

The City of Pittsburgh is attempting to collect a tax from the plaintiffs on the interest paid on bonds issued by municipal authorities, but the Commonwealth

has said that the income from these bonds shall be free from taxation within the Commonwealth. The city is attempting to collect a tax on the profit made on the sale of these bonds, but the Commonwealth has said any profit made on the sale thereof shall be free from taxation within the Commonwealth.

The intent of the legislature is so unequivocally expressed and the statute so clearly applicable to the facts of this case that it seems redundant to pursue the matter further. The plain and unmistakable terms of a statute must be interpreted according to their usual and ordinary meaning. *Calvert Distillers Corp. v. Board of Finance and Revenue*, 376 Pa. 476, 480, 481, 103 A. 2d 668 (1954). There is no need to resort to the aids of statutory construction argued to us, such as whether the above provision of the Act of 1945 is an exemption or a limitation of the right of a political subdivision to impose a tax, and whether the Act of 1945 should be strictly construed.

The city solicitor has argued earnestly in his exhaustive brief that the ordinance does not impose a tax upon the income from the bonds issued by the authorities, but imposes the tax upon the privilege of doing business within the city as measured by the income from such bonds. He cites *Commonwealth v. Bayuk Cigars*, 359 Pa. 202, 208, 58 A. 2d 445 (1948) as authority for this proposition. What the Court there said was: "The bonus required by the Act is neither an impost nor a burden on the tobacco or on any other physical property as such. It is a charge or compensation demanded of the foreign corporation by the sovereign for the privilege of doing business within the State."

The charge demanded of a foreign corporation by the sovereign for the privilege of doing business within the sovereign's territory is the basis of that deci-

sion. It is not applicable to this case where the sovereign has limited by clear and specific language a subordinate governmental body from exercising a right which is not inherent in that body, but which can be obtained by it only from the sovereign. The other cases cited by the appellants for this proposition are not applicable for the same reason.

In *Tack's Estate*, 325 Pa. 545, 548, 191 A. 155 (1937), relied upon by the appellant, the question was whether the inheritance tax imposed by the Act of June 20, 1919, P. L. 521 was a tax on the transfer of Delaware River Bridge Joint Commission bonds which were issued under an act containing substantially the same tax exempting provision as that involved in this case. The Court held the inheritance tax could be collected. But that case can give the appellants here no comfort because that decision was founded upon the theory that the inheritance tax, "is really not a tax at all in the ordinary meaning of the word, but rather a distributive share of the estate which the state retains for itself." There can be no question that the ordinance here in question imposes a tax.

We are here involved with nothing more than legislative intent. How the General Assembly could express its intent more clearly is difficult to see. The City of Pittsburgh is attempting to collect a tax on the income and profits from bonds issued by municipal authorities, and the legislature has said such bonds, their transfer and the income therefrom (including any profits made on the sale thereof) shall at all times be free from taxation within this Commonwealth.

The city may not flout its sovereign's will, as expressed by the legislature, through the simple device of calling its tax on the income of authority bonds, a privilege tax measured by the income.

Decree affirmed.