Philadelphia Saving Fund Society, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Argued May 10, 1983, before President Judge
CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MAC-
PHAIL and DOYLE.

*Joseph C. Bright, Jr.,* with him *Michael J. DeLau-
rentis, Drinker, Biddle & Reath,* for appellant.

*Vincent J. Dopko,* Deputy Attorney General, for
appellee.

OPINION BY JUDGE MACPHAIL, November 10, 1983:

This appeal[1] raises in this Court for a third time
the issue of whether interest received by a financial
institution subject to the provisions of The Mutual
Thrift Institutions Tax Act (MTITA), Act of June
22, 1964, P.L. 16, *as amended*, 72 P.S. §§1986.1-1986.6

---

[1] This case was assigned to the opinion writer September 13,
1983.

may be considered in determining the tax due pursuant to that Act, where the interest arises from obligations which are generally tax exempt under the provisions of the Act of August 31, 1971 (Act 94), P.L. 395, 72 P.S. §§4752-1 and 4752-2.

Petitioner, Philadelphia Saving Fund Society (PSFS), appeals here from an order of the Board of Finance and Revenue (Board) which denied the petition for review filed by PSFS from the refusal of the Departments of Revenue and Auditor General to resettle its MTITA tax for the year 1971. The basis upon which resettlement was sought was that interest from obligations of the Pennsylvania Turnpike Commission, the City of Philadelphia, the School District of Philadelphia, the Food Distribution Center and the Levittown Educational Foundation should be excluded from the computation of its MTITA tax. We affirm the Board.

This Court adopts the stipulation of facts and first amendment to stipulation of facts filed by counsel for the litigants as the pertinent facts for a determination of the issue now before us.

PSFS contends that the provisions of Act 94 are clear that such interest must be excluded. The Commonwealth relies upon our prior decisions in *Commonwealth v. Commonwealth Federal Savings and Loan Association of Norristown,* 29 Pa. Commonwealth Ct. 222, 370 A.2d 409 (1977) and *First Federal Savings and Loan Association of Hazleton v. Commonwealth,* 25 Pa. Commonwealth Ct. 359, 360 A.2d 773 (1976) as controlling.

PSFS admits, as it must, that both of our prior cases held that notwithstanding the provisions of Act 94, franchise or excise taxes may be measured by property, including obligations of the United States and the Commonwealth, or the income therefrom, which would not, of itself, be amenable to a direct property

tax. P.SF'S urges, however, that those decisions were in error and should be reconsidered by us. We decline to do so because we believe that the reasoning and case citations in support thereof are and should remain the law of this Commonwealth.

As we have noted, P.SF'S contends that the plain language of Act 94[2] will admit of no conclusion other than that the clear intent of the legislature was to exempt certain governmental and authority obligations from *all* taxation except inheritance and estate taxes. This contention is answered in *Norristown* by distinguishing a property tax *on* income from a franchise tax on the privilege of doing business in Pennsylvania. It is not the interest per se that is being taxed, it is the privilege of doing business that is being taxed and the measure of that tax is in this instance the net income or earnings of the institution from all sources. This conclusion is supported by a long line of federal and state cases including the United States Supreme Court opinion in *Flint v. Stone Tracy Co.*, 220 U.S. 107 (1911), where it was held that obligations otherwise

---

[2] Section 2 of Act 94, 72 P.S. §4752-2 provides as follows:

Notwithstanding the provisions of any law presently or hereafter enacted to the contrary, all obligations, their transfer and the income therefrom (including any profits made on the sale thereof), issued by the Commonwealth, any public authority, commission, board or other agency created by the Commonwealth, any political subdivision of the Commonwealth or any public authority created by any such political subdivision, shall at all times be free from taxation for State and local purposes within the Commonwealth except that any such obligations, which prior to the effective date of this act were subject to inheritance and estate taxation under the provisions of other existing acts of the General Assembly, shall continue to be subject to such taxation and any obligations issued after the effective date of this act which, but for this act, would be subject to inheritance and estate taxation, shall be subject to such taxation.

free from taxation were properly includable to determine a corporate tax measured by income of the corporation from *all* sources. *See also Werner Machine Co., Inc. v. Director of Division of Taxation, Department of Treasury, State of New Jersey,* 350 U.S. 492 (1956); *Commonwealth v. National Biscuit Co.,* 390 Pa. 642, 136 A.2d 821 (1957), *appeal dismissed,* 357 U.S. 571 (1958); *Commonwealth v. Ford Motor Co.,* 350 Pa. 236, 38 A.2d 329 (1944), *appeal dismissed,* 324 U.S. 827 (1945); *Philadelphia Contributorship for Insurance v. Commonwealth,* 98 Pa. 48 (1881).[3]

PSFS next contends that since Act 94 specifically excludes inheritance and estate taxes from the exemption provisions, no other privilege taxes can be excluded. There is case law authority for the proposition that inheritance and estate taxes are succession taxes on the privilege of receiving at death the property possessed by a decedent. *Tack's Estate,* 325 Pa. 545, 191 A. 155 (1937). There is nothing in the language of Act 94, however, to indicate that the otherwise tax exempt obligations would be subject to inheritance and estate taxes *because* those taxes were privilege taxes. In fact, the legislature may have provided the exception for inheritance and estate taxes solely because of the decision reached in *Tack's Estate*

---

[3] *See also The Dale National Bank v. Commonwealth,*     Pa.    , 465 A.2d 965 (1983) where our Supreme Court held that although it was improper for the Board of Finance and Revenue to take into consideration obligations of the United States in determining the bank's bank shares tax, state and municipal obligations need not be excluded. In construing the pertinent section of Act 94 at issue in the case now before us, Chief Justice ROBERTS wrote for a unanimous court:

> Here, it is clear that the bank shares tax is imposed on capital owned and employed by petitioner in its banking operations, which capital is a property interest separate from the state and municipal obligations themselves.

*Id.,* slip op. at 9.

and its progeny. In any event, we cannot accept as valid the argument that the statutory exceptions per se preclude the imposition of any other privilege or excise tax. PSFS argues also that the MTITA is an income tax. While the distinctions between property taxes, income taxes, franchise taxes, excise taxes and privilege taxes have not been honed to a very sharp edge by the courts, there are certain guidelines. It is true that the characterization of the nature of the tax is not controlling but it is also true that such characterization is entitled to much weight. *Stone Tracy Co.* Here the legislature has clearly categorized this tax as an excise tax. One standard for distinguishing a property tax from a franchise or excise tax is the method adopted for imposing the tax and for fixing the amount thereof. *Commonwealth v. Columbia Gas and Electric Corp.*, 336 Pa. 209, 8 A.2d 404 (1939). In the case *sub judice*, the legislature uses the net income of the institution as the measure of the tax. Institutions subject to the MTITA receive their privilege to transact business from the sovereign, *i.e.*, the Commonwealth. A fair measure of the value of that privilege is the net earnings the institution derives from it. We are satisfied that the MTITA is a true excise tax and not an income tax.[4] *Hazleton.*

PSFS states that the result of the MTITA tax is the same as if it were an income tax and that this frustrates the purpose of Act 94. Even if we would accept the premise of this argument, we cannot agree that it would lead to the conclusion that PSFS urges upon us. The legislature determines the subjects of taxation

---

[4] We observe, in light of the clear precedent in support of our holding here and the fact that differently worded statutes and ordinances require individualized interpretation, that our recent decision in *Coney Island II, Inc. v. Pottsville Area School District*, 72 Pa. Commonwealth Ct. 461, 457 A.2d 580 (1983) does not require a different result, as urged by PSFS.

and while one piece of tax legislation may seemingly frustrate the purpose of another, that is clearly within the prerogative of the legislature. In *Werner Machine Co.*, a New Jersey corporate franchise tax was upheld where the income from Federal bonds was included in a determination of the amount of tax due. The Court said, "This Court has consistently upheld franchise taxes measured by a yardstick which includes tax-exempt income or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property." *Id.*, 350 U.S. at 494.

One of the least worthy of PSFS's arguments is that if we do not reverse our prior rulings, tax exempt obligations *may* become subject to other taxes. This is pure speculation. An identical argument was dismissed in *Norristown* as "not yet ripe."

Based upon the foregoing, our conclusion of law is that interest from obligations exempt from taxation under Act 94 may be included in the measurement of the tax due from an institution subject to the provisions of MTITA.[5]

### ORDER

The decision of the Board of Finance and Revenue refusing the petition of Philadelphia Saving Fund Society for resettlement is hereby affirmed. Unless exceptions are filed within 30 days hereof, the Chief Clerk is hereby directed to enter judgment in favor of the Commonwealth and against the Appellant in the amount of $1,298,049.81 and mark the same satisfied, said amount having previously been paid by Philadelphia Saving Fund Society.

---

[5] In light of this conclusion it is unnecessary for us to rule on the Commonwealth's contention that the Food Distribution Center and Levittown Educational Foundation are not entitled to tax exemption under Act 94.

DISSENTING OPINION BY JUDGE DOYLE:

I respectfully dissent. I believe our decisions in *Commonwealth v. Commonwealth Federal Savings and Loan Association of Norristown*, 29 Pa. Commonwealth Ct. 222, 370 A.2d 409 (1977) and *First Federal Savings and Loan Association of Hazleton v. Commonwealth*, 25 Pa. Commonwealth Ct. 359, 360 A.2d 773 (1976), which held that taxation under the Mutual Thrift Institutions Tax Act[1] (MTIT Act) constitutes a franchise or excise tax on the privilege of doing business in the Commonwealth, are in error.

The nature of a tax is to be determined by its substance and not by its label. *Gaugler v. Allentown*, 410 Pa. 315, 189 A.2d 264 (1963); *Coney Island, II, Inc. v. Pottsville Area School District*, 72 Pa. Commonwealth Ct. 461, 457 A.2d 580 (1983). *Coney Island* is illustrative. In that case, we held that local "business privilege taxes" were invalid to the extent that they exceeded the limitations of Section 8 of the Local Tax Enabling Act.[2] Section 8 provides in pertinent part:

No taxes levied under the provisions of this act shall be levied by any political subdivision on the following subjects exceeding the rates specified in this section:

. . . .

(2) On each dollar of the whole volume of business transacted by wholesale dealers in goods, wares and merchandise, one mill, by retail dealers in goods, wares and merchandise and by proprietors of restaurants or other places where food, drink and refreshments are served, one and one-half mills. . . .

We rejected the argument that gross volume of business was merely the measure of the tax and noted that

---

[1] Act of June 22, 1964, P.L. 16, *as amended*, 72 P.S. §§1986.1 through 1986.6.

[2] Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §6908.

the legislation which labeled the taxes "business privilege taxes" provided "that the taxes imposed shall be *'ON* each and every dollar of the whole or gross volume of business transacted.' " *Id.* at 468, 457 A.2d 583 (emphasis by the Court). We looked beyond the face of the so called privilege taxes to their true nature and found them to be taxes *on* the subjects limited by Section 8. Similarly, the MTIT Act provides, in pertinent part:

> (b)   From and after the passage of this act, every mutual thrift institution shall annually, upon the fifteenth day of April of each year . . . make a report to the Department of Revenue, setting forth the entire amount of net earnings or income received or accrued by said mutual thrift institution from all sources during the preceding year, . . . and *upon such net earnings or income* the said mutual thrift institution shall pay into the State Treasury, through the Department of Revenue, for the use of the Commonwealth, within the time prescribed by this act for making such annual report, a State Excise Tax at the rate of six per cent (6%) for the years 1964, 1965, and 1966, and at the rate of seven and one-half per cent (7½%) for the year 1967 and the year 1968, and at the rate of eleven and one-half per cent (11½%) for the year 1969 and thereafter, *upon such annual net earnings or income. . . .* (Emphasis added.)

72 P.S. §1986.3(b).

It is clear from a reading of the MTIT Act that it imposes a tax *ON* the net earnings of mutual thrift institutions, not simply on the privilege of doing business measured by net earnings as the majority contends. As a tax *on* net earnings or income, the MTIT Act tax is limited by the exemption embodied in Act

94.[3] I do not believe interest income from the obligations of government or its agencies may be subject to taxation under the MTIT Act.

I would reverse the order of the Board of Finance and Revenue.

Judge WILLIAMS, JR. joins in this dissent.

---

[3] Act of August 31, 1971, P.L. 395, 72 P.S. §§4752-1 through 4752-2.