C. C. Collings & Co., Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

C. C. Collings & Company, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

A. E. Masten & Company, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

A. E. Masten & Company, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Commonwealth Securities & Investments, Inc. (formerly Henry Fisher & Co., Inc., d/b/a Henry Fisher Municipals), Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Commonwealth Securities & Investments, Inc. (formerly Henry Fisher & Co., Inc., d/b/a Henry Fisher Municipals), Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued October 16, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., MAC-PHAIL, DOYLE, BARRY and COLINS.

*P. J. Di Quinzio,* with him, *Francis Mazzola* and *Eileen Kennedy, Dechert, Price & Rhoads,* for petitioner, C. C. Collings & Co., Inc.

*Foster S. Goldman, Jr.,* with him, *Robert T. Harper* and *Robert W. Thomas, Berkman, Ruslander, Pohl, Lieber & Engel,* for petitioner, A. E. Masten & Company, Inc.

*John D. O'Brien, O'Brien & Friedlander,* for petitioner, Commonwealth Securities & Investments, Inc. (formerly Henry Fisher & Co., Inc., d/b/a Henry Fisher Municipals).

*Paul S. Roeder,* Deputy Attorney General, with him, *Michael A. Roman,* Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE ROGERS, March 6, 1985:

In these consolidated appeals,[1] a number of the Commonwealth's corporate taxpayers engaged in the business of underwriting and trading in municipal obligations seek review of orders of the Board of Finance and Revenue which orders sustained the action of the Department of Revenue in disallowing in the 1978-79 tax years a deduction[2] for the purposes of the corporate net income tax of profits from the sale of obligations issued by the Commonwealth, political subdivisions of the Commonwealth and their authorities, commissions, boards and other agencies.

The facts thought by the parties to be pertinent to a decision are contained in stipulations of the parties which we adopt as our findings. The following excerpts from the Stipulation of Facts filed in the appeals docketed to Nos. 1027 and 1028 C.D. 1982 (in which we have made certain mild stylistic alterations) are typical:

> 2. Petitioner [taxpayer] is a registered securities dealer which trades in and underwrites bonds, the interest on which is exempt from Federal Income Tax. Such bonds include obligations issued by the Commonwealth of Pennsylvania ("Commonwealth"), public authorities, commissions, boards and other agencies created by the Commonwealth, political subdivisions of the Commonwealth and public

---

[1] Docketed to Nos. 1584 and 1585 C.D. 1982 are the appeals related to tax years 1978-79 of C. C. Collings & Company, Inc., a registered securities dealer with a principal place of business in Philadelphia. Docketed to Nos. 1027 and 1028 C.D. 1982 are the appeals of A. E. Masten & Company, Inc., a registered securities dealer of Pittsburgh. Docketed to Nos. 2125 and 2403 C.D. 1981 are the appeals of Commonwealth Securities & Investments, Inc., a registered municipal securities dealer of Pittsburgh.

[2] Sometimes also termed by the parties an exemption.

authorities created by such political subdivisions (hereinafter collectively referred to as "Pennsylvania State and Municipal Bonds").

3. Petitioner's business, insofar as it concerns Pennsylvania State and Municipal Bonds, occurs in the following manner:

a. The bonds are negotiable bearer bonds with interest coupons.

b. Petitioner buys such bonds for its own account, but these purchases are for resale and not for investment.

c. Petitioner's purchases of such bonds are made in two ways:

(i) Petitioner buys blocks of bonds from investors or other brokers for resale. The bonds are kept in Petitioner's inventory until resold, and Petitioner takes off the coupons for any interest that may come due while it holds the bonds.

(ii) Petitioner acts as part of a group of underwriters (or the sole underwriter) of an original bond issue, and a portion, or all, of the bonds are purchased by Petitioner from the issuer and are resold to individuals or to institutional investors.

4. The statutes pursuant to which the Pennsylvania State and Municipal Bonds were issued during the period in question were similar. The General State Authority Act of 1949 is a representative example of a statute under which Pennsylvania Authority Bonds were issued. Section 15 of the Act provides as follows:

[T]he bonds issued by the Authority, their transfer, and the income therefrom (including any profits made on the sale thereof) shall at

all times be free from taxation, other than inheritance and estate taxation, within the Commonwealth of Pennsylvania.

Except for the phrase "other than inheritance and estate taxation," similar language is contained in other statutes, including: The Municipal Authorities Act of 1945, Act of May 2, 1945, P.L. 382, as amended, Section 15; The Parking Authority Law, Act of June 5, 1947, P.L. 458, Section 15; Metropolitan Transportation Authorities Act of 1963, P.L. 984, Section 39; the Pennsylvania Turnpike Philadelphia Loop Extension Act, Act of May 15, 1956, P.L. 1589, §14. The now repealed General Borough Act of May 4, 1927, P.L. 519, §2422, provided only that the bonds issued pursuant to that Act "shall be exempt from taxation for any purpose."

5. The invitations for proposals to purchase and official statements promulgated by the issuing authority, contain language simliar to that in the above quoted statutes. For example:

(1) The following excerpt from the "Official Statement, $50,000,000, the General State Authority of the Commonwealth of Pennsylvania Twenty-ninth Series, Serial Bonds," dated February 15, 1968 under the signature of Governor Raymond P. Shafer, as President of the Authority, and Honorable John K. Tabor, as Secretary of the Authority, is typical of statements contained in Official Statements promulgated by The General State Authority of the Commonwealth of Pennsylvania:

Under the [General State Authority Act], the Bonds issued by the Authority, their trans-

fer, and the income therefrom (including any profits made on the sale thereof) shall at all times be free from taxation, other than inheritance and estate taxation, within the Commonwealth.

(2) The following excerpt from an announcement of a proposed $31,015,000 bond issue of the Philadelphia Parking Authority, including an official statement dated August 15, 1978, and issued under the signature of the Chairman of that Authority, is typical of statements contained in official statements of the Philadelphia Parking Authority at the time of the issuance of such bonds:

In the opinion of Bond counsel . . . the 1978 Bonds, their transfer and the income therefrom (including any profits on the sale thereof) are free from taxation for state and local purposes within the Commonwealth of Pennsylvania, but such exemption does not extend to gift, succession, estate or inheritance taxes or other taxes not levied or assessed directly to the 1978 Bonds, their transfer or the income therefrom.

(3) The following excerpt from the announcement of a proposed $16,800,000 issue of Hospital Gross Revenue Bonds by the Sharon General Hospital Authority, including an official statement dated June 14, 1979, and issued under the signature of the Chairman of that Authority is typical of statements contained in official statements of the Authority at the time of the issuance of such bonds:

In the opinion of Bond counsel . . . the Bonds, their transfer and the income therefrom (including any profits made on the sale thereof) are free from taxation for state and local

purposes within the Commonwealth of Pennsylvania, but such exemption does not extend to gift, succession, or inheritance taxes or other taxes not levied or assessed directly on the Bonds, their transfer and the income therefrom.

. . . .

7. On August 31, 1971, the Pennsylvania Legislature enacted Act 94, 72 *Pa. Stat. Ann.* §4752-2, which provides as follows:

Notwithstanding the provisions of any law presently or hereinafter enacted to the contrary, all obligations, their transfer and the income therefrom (including any profits made on the sale thereof), issued by the Commonwealth, any public authority, commission, board or other agency created by the Commonwealth, any political subdivision of the Commonwealth or any public authority created by any such political subdivision, shall at all times be free from taxation for State and local purposes within the Commonwealth except . . . [inheritance and estate taxation]. . . .

8. On March 28, 1972, the Department of Revenue issued Taxing Memorandum No. 84. Taxing Memorandum No. 84 provides in pertinent part that Act No. 94, 72 *Pa. Stat. Ann.* §4752-2 (Purdon's) exempts Pennsylvania State and Municipal Bonds from taxation for state and local purposes, "including any profits made on the sale thereof." . . . .

9. Prior to 1978 gains from dealings in Pennsylvania State and Municipal Bonds have been determined not to be included in the tax base of the Corporate Net Income Tax for

Petitioner and, in some instances, other similarly situated taxpayers. Gain from the sale of Pennsylvania State and Municipal Bonds has been excluded from Petitioner's tax base for Corporate Net Income Tax by the Department of Revenue in its settlement of Petitioner's Corporate Net Income Tax reports for all tax years ended prior to September 30, 1977. The Department of the Auditor General has not objected to such exclusions.

10. If Petitioner's officers were called to testify in this proceeding, they would testify that in all of Petitioner's dealings with the Commonwealth, with its commissions, boards, agencies, and authorities, with its political subdivisions, and with the commissions, boards, agencies and authorities of its political subdivisions, and in all of its dealings in connection with Pennsylvania State and Municipal Bonds with other dealers or underwriters, Petitioner has relied upon the settlements of its Pennsylvania Corporate Net Income Tax liabilities described above, the identical treatment afforded to other similarly situated taxpayers, and the provisions of the statutes authorizing this issuance of such bonds, as well as Act No. 94, 72 P.S. §4752-2, all of which expressly provide that any profit made on the sale of such bonds would at all times be free from taxation for state and local purposes. Petitioner's officers would further testify that Petitioner has dealt with such issuers, its sellers and its purchasers of such bonds with the understanding that any gain realized on any sales of Pennsylvania State and Municipal Bonds would not be included in the tax base of the Pennsylvania

Corporate Net Income Tax. The Commonwealth has no evidence which would disprove such testimony.

11. On May 24, 1978, the Assistant Director of the Bureau of Corporation Taxes, Department of Revenue, issued Taxing Memorandum No. 98, which modified Taxing Memorandum No. 84. Taxing Memorandum No. 98 provides in pertinent part that gains "from the sale of obligations issued by the United States, Pennsylvania, or any Pennsylvania subdivision or by any of their instrumentalities or agencies shall not be excluded from taxable income for Pennsylvania Corporate Net Income Tax purposes." . . . If the Commonwealth's representatives were called to testify in this proceeding, they would state that starting with tax year 1978, the Department of Revenue has uniformly included gains from the sale of Pennsylvania State and Municipal Bonds in the Corporate Net Income Tax base for Petitioner and all similarly situated taxpayers. Petitioner has no evidence which would disprove such testimony.

12. The first public notice of a change in the Department of Revenue's position with respect to the includability of gains from the sale of Pennsylvania State and Municipal Bonds appeared on August 12, 1978, when the Department published a notice in the *Pennsylvania Bulletin* (Vol. 8, No. 32, Saturday, August 12, 1978) that it proposed to adopt a regulation which would provide in pertinent part that gains "from the sale of obligations issued by the United States, Pennsylvania, any other State, or any political subdivision or agency

thereof, shall not be excluded from taxable income'' for purposes of the Pennsylvania Corporate Net Income Tax. . . .

13. The proposed regulation, Reg. §4-210.02, was formally adopted on September 15, 1978 by order of the Department of Revenue, to take effect upon publication in the *Pennsylvania Bulletin*. The order adopting the proposed regulation was published in the November 4, 1978 issue of the *Pennsylvania Bulletin* (Vol. 8, No. 44). . . .

. . . .

15. Some registered securities dealers having offices in Pennsylvania and dealing in Pennsylvania State and Municipal Bonds do business in corporate form, and others do business as partnerships or proprietorships. Those, as Petitioner, who do business in corporate form are subject to the Pennsylvania Corporate Net Income Tax. Those dealers who do business as partnerships or proprietorships are not subject to the Pennsylvania Corporate Net Income Tax, but are instead subject to Pennsylvania Personal Income Tax which does not impose a tax on gain from the sale of Pennsylvania State and Municipal Bonds.

16. If Petitioner's officers were called to testify in this proceeding, they would testify that, if gains from the sales of Pennsylvania State and Municipal Bonds are to be included in the tax base for Pennsylvania Corporate Net Income Tax purposes, Petitioner would have to consider including the tax cost of dealing in such bonds in its bid prices in any underwriting it agreed to undertake, in its bid prices to any

underwriting group it may have been invited to join and in its bid prices with respect to any outstanding bonds it may have purchased from any underwriter or other municipal securities dealer; and that such Corporate Net Income Tax would be one of the numerous considerations going into the bid price of any bond issue, along with general market conditions, legal fees, underwriting fees and other commissions, and the security rating of the issuing authority. The Commonwealth has no evidence which would disprove any such testimony.

Thus, the primary issue here presented is the legality of the Department's recent alteration of long-standing tax policy by mandating the inclusion in the tax base for purposes of the Corporate Net Income Tax of profits from the sale of Commonwealth municipal obligations. The taxpayers contend that the Act of August 31, 1971, P.L. 395, 72 P.S. §4752-1 (hereinafter "Act 94") as interpreted, *inter alia,* by the Department's Taxing Memorandum No. 84 and some forty years of the Department's practice forbid the inclusion.

The Commonwealth concedes that the Petitioners must prevail if Act 94 applies but responds that Act 94 is inapplicable because the Corporate Net Income Tax is not imposed on sources of income declared exempt from taxation by the Act but, instead, is imposed on specified business privileges, the taxability of which are unaffected by Act 94. Specifically, Section 402 of the Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7402 contains the following statement of the operational purpose, function, or rationale of the Corporate Net Income Tax:

Every corporation shall be subject to, and shall pay for the privilege of (i) doing business in

this Commonwealth; or (ii) carrying on activities in this Commonwealth; (iii) having capital or property employed or used in this Commonwealth; or (iv) owning property in this Commonwealth.

In addition, the Commonwealth contends that our decisions in the cases reported as *Philadelphia Saving Fund Society v. Commonwealth,* 78 Pa. Commonwealth Ct. 283, 467 A.2d 420 (1983); *Commonwealth v. Commonwealth Federal Savings and Loan Association of Norristown,* 29 Pa. Commonwealth Ct. 222, 370 A.2d 409 (1977); and *First Federal Savings and Loan Association of Hazleton v. Commonwealth,* 25 Pa. Commonwealth Ct. 359, 360 A.2d 773 (1976), compel a determination of the propriety of the inclusion of tax exempt property and income in the measure of the Corporate Net Income Tax.

The cases cited concerned the Mutual Thrift Institutions Tax[3] and held that property and income excluded from tax by Act 94 and by similar legislation applicable to obligations of the United States could nevertheless be included in the measure of the tax because the Mutual Thrift Institutions Tax is a franchise or excise tax on the privilege of doing business in this Commonwealth and not a direct tax on property or income therefrom. This fundamental premise as to the proper characterization of the Mutual Thrift Institutions Tax, from which the decisions proceed, is described as undisputed by President Judge Bowman in the first such decision. *Hazleton,* 25 Pa. Commonwealth Ct. at 361, 360 A.2d at 774.

The applicability of a similar premise in the cases *sub judice* is very much a matter of dispute. The taxpayers here argue that notwithstanding the abstract

---

[3] Act of June 22, 1964, P.L. 16, *as amended,* 72 P.S. §1986.1.

statement of purpose set forth in Section 402 and reproduced above to exact from businesses payment for the exercise of the privilege of doing business in this Commonwealth, the Corporate Net Income Tax is, as the name ineluctably compels, a tax on income. We agree.

We noted in *Philadelphia Saving Fund Society* that:

> While the distinctions between property taxes, income taxes, franchise taxes, excise taxes and privilege taxes have not been honed to a very sharp edge by the courts, there are certain guidelines.

78 Pa. Commonwealth Ct. at 288, 467 A.2d at 423.[4] Chief among these is the precept that the nature of a tax is to be determined by its substance. *Gaugler v. Allentown*, 410 Pa. 315, 189 A.2d 264 (1963). In *Dale National Bank v. Commonwealth*, 502 Pa. 170, 465 A.2d 965 (1983), our Supreme Court discussed the effect of the following legislative statement of rationale with respect to the Bank Shares Tax.[5]

> [The tax] shall be a tax for the privilege of doing business in this Commonwealth. . . .[6]

---

[4] The passage of time has failed to illuminate the dichotomy. In 1894 the United States Congress enacted a flat rate 2% tax on individual incomes which was held to be unconstitutional in *Springer v. United States*, 102 U.S. 586 (1881). Congress responded with a 1% corporate excise tax which withstood constitutional challenge on the theory that it was not a direct tax and, therefore, was not required to be apportioned by Article 1, §§2, 9 of the United States Constitution. *Flint v. Stone Tracy Co.*, 220 U.S. 107 (1911). A more fundamental response took the form of the Sixteenth Amendment to the United States Constitution adopted in 1913 and directly authorizing a Federal individual income tax without regard to apportionment among the several states.

[5] Section 701 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, 72 P.S. §7701.

[6] *See* Act of December 17, 1982, P.L. 1385, 72 P.S. §7701.1.

The court wrote:

> The Commonwealth [which asserted that the language reproduced above accomplished the categorization of the bank shares tax as a franchise tax] has overlooked the fact that neither [this language] nor any other provision of Act 317 effected a change in the means of calculating petitioner's bank shares tax. Although Section 701.1 would characterize the tax imposed by Section 701 as a "tax for the privilege of doing business," it is clear that the tax imposed by Section 701 was and continues to be a property tax. . . .

*Id.* at 176, 465 A.2d at 968. To the same effect, in *Coney Island II, Inc. v. Pottsville Area School District,* 72 Pa. Commonwealth Ct. 461, 457 A.2d 580 (1983), we refused to give controlling effect to an abstract legislative description of a local business tax as imposed "on the privilege of doing business" and held that the tax, despite this denomination, was subject to the limitations applicable to direct taxes and contained in Section 8 of The Local Tax Enabling Act.[7]

As in *Dale National Bank,* the Commonwealth's reliance on the statement of rationale contained in Section 402 of the Act of March 4, 1971, must be unavailing. To be sure, as the Legislature there states, corporate citizens must, through taxation in its various forms, pay for the privilege of doing business, carrying on activities, and owning property in this Commonwealth. The issue is not, however, the rationale for exacting the payment but the subject of the exaction. From our review of the whole of the statutory provisions comprising the Corporate Net Income Tax,

---

[7] Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §6901.

we have no doubt that the subject of the tax is corporate net income. We must conclude that with respect to the Corporate Net Income Tax, "[t]here is no economic consequence that follows necessarily from the use of the particular words, 'privilege of doing business,' and a focus on that formalism merely obscures the question. . . ." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 288 (1977).

The necessity of elevating substance over semantics in the categorization of tax legislation has as one consequence the impropriety of applying case authorities to species of taxation other than those made the subject of judicial decision. That is, simply, "differently worded statutes and ordinances require individualized interpretation. . . ." *Philadelphia Saving Fund Society*, 78 Pa. Commonwealth Ct. at 288 n. 4, 467 A.2d at 423 n. 4. We did not consider the nature of the Corporate Net Income Tax in *Philadelphia Saving Fund Society, Hazleton* or *Norristown* and, to the contrary, we expressly disavowed any implication that we were there deciding the issues here presented. *Norristown*, 29 Pa. Commonwealth Ct. at 226, 370 A.2d at 412; *Philadelphia Saving Fund Society*, 78 Pa. Commonwealth Ct. at 289, 467 A.2d at 423.

Our conclusion that the Corporate Net Income Tax constitutes a direct tax on corporate net income brings these appeals within the rule of such cases as *Arthurs v. Pittsburgh*, 185 Pa. Superior Ct. 85, 138 A.2d 200 (1958), which held that the taxation of profits from the sale of Pennsylvania municipal obligations violated a statutory exemption materially identical to that provided by Act 94. Concerning the applicability of the exemptive statute there at issue, Judge Woodside wrote for the court:

> The intent of the legislature is so unequivocally expressed and the statute so clearly appli-

cable to the facts of this case that it seems redundant to pursue the matter further.

*Id.* at 89, 138 A.2d at 202. There is no reason further to belabor the facial inconsistency between Act 94 and the Department's Taxing Memorandum No. 98 and Regulation §4-210.02.

Having found in favor of the Petitioners, and in accordance with the Stipulations of the parties, we enter the following:

ORDER

AND Now, this 6th day of March, 1985, the appeals docketed to Nos. 1027 and 1028 C.D. 1982, 1584 and 1585 C.D. 1982, and 2125 and 2403 C.D. 1981 are sustained.

The Corporate Net Income Tax of petitioners, C. C. Collings & Co., Inc., A. E. Masten & Company, Inc., and Commonwealth Securities & Investments, Inc., for the fiscal years ended September 30, 1978 and September 30, 1979, is hereby resettled to indicate no tax liability.

This decision was reached prior to the resignation of Judge WILLIAMS, JR.