First Federal Savings & Loan Association of Philadelphia, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Commonwealth of Pennsylvania *v.* First Federal Savings & Loan Association, Appellant.

Argued April 10, 1985, before President Judge CRUMLISH, JR., and Judges ROGERS, MACPHAIL, DOYLE, BARRY and PALLADINO.

*John F. Stoviak,* with him, *Timothy W. Callahan, II,* Of Counsel: *Dilworth, Paxson, Kalish & Kauffman,* for petitioner/appellant.

*Vincent J. Dopko,* Deputy Attorney General, for respondent/appellee.

OPINION IN SUPPORT OF AFFIRMANCE BY JUDGE MAC-PHAIL, September 13, 1985:

In this case, the sole issue presented for our determination is whether the orders of the Board of Finance and Revenue (Board) denying petitions for resettlement by First Federal Savings & Loan Association of Philadelphia (Petitioner) should be upheld insofar as they affirm the action of the Department of Revenue (Department) assessing taxes against the Petitioner under the provisions of the Mutual Thrift Institutions Tax Act (MTIT), Act of June 22, 1964, P.L. 16, *as amended,* 72 P.S. §§1986.1-1986.6 based upon interest income received by Petitioner from its holdings of various obligations issued by the Commonwealth of Pennsylvania, its agencies or political subdivisions.

The parties have entered into stipulations of fact which we adopt as our own. Inasmuch as the narrow issue before us is purely a question of law, we deem it unnecessary to restate the agreed upon facts seriatim. The tax years in question are those ending December 31, 1972 and September 30, 1973. There is no dispute that the income which the Department has taxed is interest income which Petitioner claims is

exempt under the provisions of Section 2 of the Act of August 31, 1971 (Act 94), P.L. 395, 72 P.S. §4752-2.[1]

Our Court has uniformly upheld the Department's position in this matter, our most recent decision being *Philadelphia Saving Fund Society v. Commonwealth*, 78 Pa. Commonwealth Ct. 283, 467 A.2d 420 (1983). There we held that the MTIT is an excise or franchise tax where the legislature has provided that the net income of a taxpayer from all sources is the measure of the tax due on the privilege of doing business in the Commonwealth. There, as here, the taxpayer argued that Act 94 exempts certain governmental and authority obligations from all taxes except inheritance and estate taxes. We rejected that argument and do so again for the reasons set forth in *Philadelphia Saving Fund Society*.

The Petitioner acknowledges, as did the taxpayer in the *Philadelphia Saving Fund Society*, that to prevail, we must be convinced that we should reverse our prior decisions. The Petitioner contends that we now have strong support in a recent case of our own Court

---

[1] Section 2 of Act 94 provides as follows:

Notwithstanding the provisions of any law presently or hereafter enacted to the contrary, all obligations, their transfer and the income therefrom (including any profits made on the sale thereof), issued by the Commonwealth, any public authority, commission, board or other agency created by the Commonwealth, any political subdivision of the Commonwealth or any public authority created by any such political subdivision, shall at all times be free from taxation for State and local purposes within the Commonwealth except that any such obligations, which prior to the effective date of this act were subject to inheritance and estate taxation under the provisions of other existing acts of the General Assembly, shall continue to be subject to such taxation and any obligations issued after the effective date of this act which, but for this act, would be subject to inheritance and estate taxation, shall be subject to such taxation.

to do so. *C. C. Collings & Co., Inc. v. Commonwealth of Pennsylvania,* 88 Pa. Commonwealth Ct. 184, 488 A.2d 1187 (1985) held that Act 94 did exempt from the provisions of the corporate net income tax provisions of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§7401-7408 (CNIT), income derived from Commonwealth and municipal Bonds. What Petitioner overlooks is that our Court, in the opinion authored by Judge ROGERS, took great pains to point out that we did not attempt to rule upon the CNIT in *Philadelphia Saving Fund Society* nor did we infer that our decision in *C. C. Collings & Co., Inc.* in any way detracted from what we decided with respect to the MTIT in *Philadelphia Saving Fund Society.* Indeed, Judge ROGERS reiterated in *C. C. Collings & Co., Inc.,* 88 Pa. Commonwealth Ct. at 198, 488 A.2d at 1193 what we said in *Philadelphia Saving Fund Society,* "differently worded statutes and ordinances require individualized interpretation. . . ." 78 Pa. Commonwealth Ct. at 288 n. 4, 467 A.2d at 423 n. 4. Judge ROGERS stated, "From our review of the whole of the statutory provisions comprising the Corporate Net Income Tax, we have no doubt that the subject of the tax is corporate income." 88 Pa. Commonwealth Ct. 198, 488 A.2d 1193 (1985).

It is thus apparent that *Collings* does not control the result in the case *sub judice;* neither have we been persuaded by Petitioner's arguments that our prior decisions were incorrect. We thus conclude as a matter of law that the orders of the Board must be upheld. An appropriate nisi order will be entered in accord with the stipulations of the litigants.

Judge COLINS did not participate in the decision in this case.

President Judge CRUMLISH, JR. and Judge BARRY join this opinion in support of affirmance.

OPINION IN SUPPORT OF REVERSAL BY JUDGE DOYLE:

The clear issue of law in this case is whether the interest from Commonwealth obligations held for investment purposes by mutual thrift institutions is subject to the tax imposed by The Mutual Thrift Institutions Tax Act, Act of June 22, 1964, P.L. 16, 72 P.S. §§1986.1-1986.6 (MTIT Act) or whether taxing of that interest is precluded by the Act of August 31, 1971, P.L. 395, 72 P.S. §§4752-1-4752-2 (Act 94).

Section 3 of the MTIT Act, 72 P.S. §1986.3, provides:

> (b) [E]very mutual thrift institution shall annually . . . make a report to the Department of Revenue, setting forth the entire amount of net earnings or income received or accrued by said mutual thrift institution from all sources during the preceding year . . . and upon such net earnings or income the said mutual thrift institution shall pay . . . a State excise tax . . . for the privilege of doing business in the Commonwealth.
>
> . . . .
>
> (e) Mutual thrift institutions subject to the provisions of this act shall be exempt from all other corporate taxes imposed by the Commonwealth for State purposes, and from all local taxation imposed by political subdivisions of this Commonwealth under the authority of the laws of this Commonwealth, except taxes on real estate or transfers thereof.

Section 2 of Act 94, 72 P.S. §4752-2, provides in pertinent part:

> Notwithstanding the provisions of any law presently or hereafter enacted to the contrary, all obligations, their transfer and the income therefrom (including any profits made on the

sale thereof), issued by the Commonwealth, any public authority, commission, board or other agency created by the Commonwealth, any political subdivision of the Commonwealth or any public authority created by any such political subdivision, shall at all times be free from taxation for State and local purposes within the Commonwealth.

The determination of whether Act 94 exempts the subject interest from taxation rests upon whether the MTIT Act is an excise tax for the privilege of doing business or a property tax. This Court in three prior decisions has squarely held that the MTIT Act is an excise tax. *Philadelphia Saving Fund Society v. Commonwealth,* 78 Pa. Commonwealth Ct. 283, 467 A.2d 420 (1983) *(PSFS)* ; *Commonwealth v. Commonwealth Federal Savings and Loan Association of Norristown,* 29 Pa. Commonwealth Ct. 222, 370 A.2d 409 (1977) ; *First Federal Savings and Loan Association of Hazleton v. Commonwealth,* 25 Pa. Commonwealth Ct. 359, 360 A.2d 773 (1976).

I dissented in *PSFS* and indicated there that I believed the characterization of the MTIT Act as a tax upon the privilege of doing business to be erroneous. I adhere to that view. In my dissent in *PSFS* I observed that a tax is to be determined by its substance and not by its label. *Id.* at 290, 467 A.2d at 424 (citing *Gaugler v. Allentown,* 410 Pa. 315, 189 A.2d 264 (1963) ; *Coney Island, II, Inc. v. Pottsville Area School District,* 72 Pa. Commonwealth Ct. 461, 457 A.2d 580 (1983)). The dissent in *PSFS* states that the MTIT Act "imposes a tax *ON* the net earnings of mutual thrift institutions, not simply on the privilege of doing business measured by net earnings." *Id.* at 291, 467 A.2d at 424, and concludes that "[a]s a tax *on* net earnings or income, the MTIT Act Tax is limited by

the exemption embodied in Act 94.'' *Id*. at 291-92, 467 A.2d at 424. This is still sound reasoning.

The position that tax labels should not properly be considered in classifying a tax was embraced by the United States Supreme Court in a decision filed only days before *PSFS* and not cited therein. In *Aloha Airlines, Inc. v. Director of Taxation of Hawaii*, U.S. , 104 S. Ct. 291 (1983), the High Court held that a Hawaii statute which declared itself to be a tax upon the personal property of airlines, but which in reality imposed a tax upon the annual gross incomes of airlines operating within the state, was preempted by a federal law which prohibited a state from levying a tax upon gross receipts derived from the sale of air transportation. The federal statute did provide that property taxes were not included in the prohibition. In response to the state's argument that because the Hawaii statute was styled as a property tax it was not preempted the Court wrote:

> The manner in which the state legislature has described and categorized [the statute] cannot mask the fact that the purpose and effect of the provision is to impose a levy upon the gross receipts of airlines.

U.S. at , 104 S. Ct. at 295. The High Court's language in *Aloha* is to be contrasted with the majority's statement in *PSFS* that the legislature's characterization of its tax is entitled to much weight. Additionally, Judge BLATT in her decision in *Coney Island* recognized the danger of exalting form over substance not only with respect to being influenced by what the taxing authority calls its tax, but also with respect to being influenced by how that authority directs the tax to be measured. Judge BLATT agreed with the trial court's concern in *Coney Island* that if the method of computation specified was relevant to

a determination of the type of tax "it would require only a tax draftsman of limited imagination and expertise employing the 'subject versus matter' approach to structure an ordinance or resolution" to circumvent the law. This rationale, in my view, is persuasive and recognizes the abuses which could occur under the majority's reasoning in *PSFS* where the method for imposing the tax and for fixing the amount was, along with the legislature's characterization of the tax, used by the Court to determine what type of tax the MTIT Act created.

Application of the *Aloha* "purpose and effect" test to the present case clearly indicates that what is being taxed is the mutual thrift institution's property. The bonds are property; the income from the bonds are part of that property. The fact that the bonds have changed in value does not mean that the amount of that change is not part of their property worth. Palpably the tax on the increase on the property worth is, in purpose and effect, a tax upon the property and, hence, violative of Act 94.

In *C. C. Collings and Co., Inc. v. Commonwealth*, 88 Pa. Commonwealth Ct. 184, 488 A.2d 1187 (1985), this Court concluded that profits from the sale of Commonwealth obligations are *not* properly included in arriving at a tax base for purposes of determining corporate net income tax pursuant to the Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§7401-7408 (CNIT Act). The decision in *C. C. Collings* turned upon our determination that the CNIT is a tax upon income. In so holding, we refused to allow an amendment to that tax (which amendment stated that the purpose of the tax was to tax the privilege of doing business) to govern our decision.

Although *C. C. Collings* dealt with the CNIT Act and not the MTIT Act, in my view, regardless of which

of the two Acts applies, a tax upon interest or profits arising from a Commonwealth obligation is a tax upon property. We have already held in *Norristown, Hazleton* and *PSFS* that the MTIT Act is a tax *measured by* net income. *Coney Island,* as noted earlier, cautioned against using that factor as a basis for classification of a tax. I believe *Coney Island* to be the correct approach and can find no rational basis for disparate treatment of the MTIT Act and the CNIT Act.

Additionally, the Pennsylvania Superior Court's interpretation of the language of Section 15 of the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §318, which language is similar to the language of Act 94, buttresses the conclusion that Act 94 is applicable. In interpreting the words "the bonds issued by any Authority, their transfer and the income therefrom, (including any profits made on the sale thereof) shall at all times be free from taxation within the Commonwealth of Pennsylvania", the Court, in *Arthurs v. Pittsburgh,* 185 Pa. Superior Ct. 85, 138 A.2d 200 (1958), rejected the business privilege tax argument and wrote:

> The City of Pittsburgh is attempting to collect a tax on the income and profits from bonds issued by municipal authorities, and the legislature has said such bonds, their transfer and the income therefrom (including any profits made on the sale thereof) shall at all times be free from taxation with this Commonwealth.
>
> This City may not flout its sovereign's will, as expressed by the legislature, through the simple device of calling its tax on the income of authority bonds, a privilege tax measured by the income.

185 Pa. Superior Ct. at 90, 138 A.2d at 203. Based upon the foregoing I would hold that the MTIT tax

upon income from Commonwealth obligations is prohibited by Act 94.

Judge ROGERS and Judge PALLADINO join this opinion in support of reversal.

### PER CURIAM ORDER

AND Now, this 13th day of September, 1985, because of an equally divided Court, the orders of the Board of Finance and Revenue refusing the petitions of First Federal Savings & Loan Association of Philadelphia for resettlement are left standing, the party seeking to overturn the Board's decision not having carried its burden of persuasion. Unless exceptions are filed within thirty (30) days hereof, the Chief Clerk is hereby directed to enter judgment in favor of the Commonwealth in the sum of $306,361.62 plus interest on the balance due for the tax year ending December 31, 1972 and judgment in favor of the Commonwealth in the sum of $303,035.01 plus interest for the tax year ending September 30, 1973.

Judge COLINS did not participate in the decision in this case.